UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

GLENDA JEAN ARWOOD )
)
V. ) NO. 2:12-CV-381
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security )

REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation regarding the administrative denial of the plaintiff's application for disability insurance benefits. The plaintiff has filed a Motion for Judgment on the Pleadings [Doc. 12], and the defendant Commissioner has filed a Motion for Summary Judgment [Doc. 14].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence.

*Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

The plaintiff was 51 years of age at the time of her alleged disability onset date of January 20, 2010, which is "approaching advanced age" under the regulations applicable to the medical-vocational guidelines [the "Grid"]. On April 28, 2013, she reached the age of 55, which is "advanced age" under the Grid. She has a high school education, and there is no dispute that she cannot return to her past relevant work. She worked for approximately 20 years as an LPN and for a short time in an antique store.

The plaintiff's medical history is summarized in her brief as follows:

> The plaintiff was seen be Dr. William M. Bell, III, a rheumatologist, in November 2007 for complaints of hip pain. She was also complaining of fatigue and neck and chest discomfort (TR 200). Physical examination revealed good mobility of the neck and lumbar spine but on extension and right lateral flexion of the lumbar spine, the plaintiff complained of pain in the posterior buttocks and over the posterior trochanteric area. On her left had, there was mild soreness over the first MP joint and a small Heberden's node on the second digit (TR. 198). Dr. Bell diagnosed a positive anti-nuclear antibody of significant titer but Dr. Bell did not feel that the Plaintiff had a connective tissue disorder, right trochanteric bursitis, right hip area pain, early osteoarthritis involving the left hand, a sleep disorder with associated fatigue, hypertension, palpatations, depression and restless leg syndrome (TR. 197). In January 2008, Dr. Bell noted that the Plaintiff had undergone sleep apnea testing which was positive and she was scheduled to begin a CPAP unit. Her right hip is still sore and he gave her an injection (TR 196). In April 2008, he noted that she was better since the institution of her CPAP unit with less fatigue. He advised an MRI of the hop and surrounding structures (TR. 195). The MRI of the right hip was within normal limits (Tr. 203).
> The Plaintiff was seen for bilateral foot pain with the left being greater than the right by Dr. Karen A. McRae, an orthopaedic surgeon. On the left foot, dorsiflexion beyond neutral produced posterior insertion Achilles tendon pain. X-

2

rays of the left foot demonstrated a very prominent Haglund's deformity and the same was true of the right foot (Tr. 206). She diagnosed bilateral insertional Achilles tendinopathy and she advised lifts (Tr. 207).

The Plaintiff came under the care of Mountain States Psychiatry. Dr. Ranjay Halder diagnosed the Plaintiff as suffering from major depressive disorder, recurrent, moderate and opined that her current GAF was 45 (TR 288). This was on September 24, 2007 (Tr. 285). She was starting on Wellbutrin for depression and in October 2007, her mood was definitely better. However, he again diagnosed major depressive disorder recurrent moderate (TR. 282). In December 2007, it was noted that her depression continued to do well but the Plaintiff complained of sleep difficulty and low energy (TR 279). Dr. Halder continued to diagnose major depressive disorder, recurrent, moderate (TR 271). In February 2010, the Plaintiff was suffering from major depressive disorder, severe and recurrent and her medication was switched (TR. 264).

The Plaintiff was hospitalized at Woodbridge Hospital in February 2010. She complained of being increasingly more depressed and anxious (TR 211). She was diagnosed as suffering from major depression, recurrent, severe and anxiety disorder (TR 212). She also had insulin dependent diabetes and hypertension and her current GAF was 30 on admission (Tr. 213). Upon discharge, she was diagnosed as suffering from major depression, complicated by prolonged bereavement, and anxiety disorder NOS (TR. 209). She also suffered from hypertension, GERD, diabetes, arthritis, and anemia. It was also noted that she had chronic mental illness, occupational, financial grief, and limited coping skills. Her GAF on admission and discharge was 35 and she left against medical advice (TR 210).

The Plaintiff was evaluated by Ms. Kathy Jo Miller, a clinical psychologist, on October 4, 2010. She noted that the Plaintiff's affect was restricted and she lacked animation. She appeared worn and tired (TR 334). Ms Miller diagnosed dysthmic disorder, moderate with medication, average intellectual functioning estimated by her education, work history and vocabulary, and she opined that the Plaintiff's current GAF was 55. She opined that the plaintiff was not significantly limited in her ability to understand and remember based upon relation of that date, and her ability to sustain concentration was adequate on that date, however, persistence was limited by a loss of interest and motivation, moderate secondary to dysthymic disorder with medication. Social interaction was limited by isolating behaviors secondary to dysthymic disorder, moderate with medication (TR 336). Adaptation was limited by dysthymic disorder, moderate with medication and dependent personality traits (TR. 337).

The Plaintiff was also evaluated by Dr. Krish Purswani. He diagnosed left foot pain and right hip pain (TR. 316)

The Plaintiff was seen by the Carter County Health Department. They diagnosed Achilles tendinitis, a history of skin cancer, neuropathy, and depression with therapy that was moderate to severe (TR 330).

The Plaintiff came under the care of the Charlotte Taylor Center. They diagnosed major depressive disorder, panic disorder without agoraphobia, and a

3

mood disorder. They opined that her GAF was 51 and had been so for six months. It was also noted that she had chronic physical problems and diabetes as well as hypertension and restless leg syndrome. Her symptoms of depression and anxiety included loss of interest, sadness, worrying, poor sleep and history of panic attacks with medication prescribed by Dr. Pack (TR 342). In January 2011, it was noted tha the plaintiff had major depressive disorder, recurrent, and generalized anxiety disorder (TR 364). In February 2011, it was noted that the Plaintiff had symptoms of depression and anxiety with loss of interest, low mood and decreased energy (TR 363).

Dr. Sheryl Pack wrote a letter wherein she reported that the Plaintiff had been her patient since 2006. Her diagnosis included major depressive disorder, dysthymic disorder, hypertension, diabetes, asthma, peripheral neuropathy and arthralgia. She had problems with mood disorder for many years but had a significant worsening of her symptoms over the past three years. The Plaintiff had an inability to concentrate and stay focused on a complete task and had episodes of depression that caused severe symptoms which made her unable to work. Her joint pain and neuropathy caused difficult with standing or sitting for any length of time. She reported that she did not believe that Plaintiff was able to work in any capacity. Her mental and physical symptoms constituted a valid disability (TR 369).

A state agency reviewing psychologist, Dr. Jenaan Khaleeli, Psy.D., reported the Plaintiff had depressive symptoms characterized by sleep disturbance, decreased energy, difficulty concentrating or thinking, and thought of suicide (TR 300). She opined that the Plaintiff had difficulties in maintaining social functioning, maintaining concentration, persistence or pace, which were moderate, and one or two episodes of decompensation each of extended duration (TR 307). She opined that the Plaintiff's allegations were credible and her anxiety and avoidance traits could reasonably produce the stated symptoms and severity alleged was consistent with the objective findings. She opined that the Plaintiff had moderate limitations in basic work-like duties (TR 309). She opined that the Plaintiff was moderately limited in her ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods, and to perform activities within a schedule, maintain regular attendance, and to be functional within customary tolerances (TR 311). She was also moderately limited in her ability to maintain a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. She was also moderately limited in her ability to respond appropriately to changes in the work setting (TR 312). She opined that the Plaintiff could not understand or remember simple and one to three step detailed tasks, could concentrate and persist for at least a two time period in an eight-hour day with customary breaks, could interact appropriately with the public, co-workers and supervisors, and could adapt to infrequent changes within the restrictions applied

4

above (TR 313).

A phyical medical consultant, Dr. Zwi Kahanowicz, opined that the Plaintiff's physical impairments were not severe (TR 317).

Another state agency reviewing psychologist, Dr. Rebecca P. Joslin, Ed. D., opined that the Plaintiff had affective disorders and anxiety related disorders (TR 344). She also opined that the Plaintiff had moderate limitations in her activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence or pace, and had one or two episodes of decompensation, each of extended duration (TR 354). She opined that the Plaintiff that the Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods and to work in coordination with or proximity to others without be distracted by them (TR 358), was moderately limited in her ability to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to accept instructions and respond appropriately to criticism from supervisors, to get along with co-workers or peers without distracting them or exhibiting behavior extremes and to respond appropriately to changes in the work setting. However, she was markedly limited in her ability to interact appropriately with the general public (TR 359). She opined that the Plaintiff could understand and remember simple and detailed instructions, could maintain attention, concentration, persistence and pace for at least two hours despite periods of increased signs and symptoms and distractions from others, should not interact directly with the general public and feedback should be given in a supportive manner, but she was able to interact with co-workers and supervisors on an occasional basis. She was able to adapt to infrequent changes in the work place (TR 360).

[Doc. 13, pgs. 2-8].

At the administrative hearing, the Administrative Law Judge ["ALJ"] asked Cathy Sanders, a vocational expert ["VE"] to "physically assume that the claimant is restricted to light work. Mentally assume that she is only able to perform and maintain concentration for simply, routine, repetitive tasks. Assume that she is only able to adapt to gradual and infrequent changes in a work setting. Assume that she is limited to work that does not require public interaction or more than occasional interaction with coworkers and supervisors. Finally, assume that she is limited to work where supervision is supportive and non-confrontational." After responding that, with those limitations, the plaintiff could not

5

return to her past occupations as an LPN and antique store attendant, Ms. Sanders was asked to "assume a hypothetical person of her age, education level, and work experience, and her age is closely approaching advanced age, and education level is, at least, high school and her work history is as you have described it. Assume that this hypothetical person is limited as in hypo number one. Would there be other jobs in the national economy that they could perform?"

Ms. Sanders gave a somewhat guarded and confusing answer. She stated "I am going to give 50 percent ranges, because I can't really accurately say about the non – You know, the supportive supervision. It may exist. It may not exist, so I am going to do a 50/50 split, because the other part of the hypothetical would support some entries." She then identified around 450,000 jobs in the national economy, and 12,500 in the State of Tennessee, in an attempt to answer some portion of the hypothetical question affirmatively. (Tr. 49-50). If plaintiff were limited to the extent described by Dr. Pack, her treating family doctor, (Tr. 369), there would be no jobs which plaintiff could perform. (Tr. 51). If limited to the extent opined by State Agency psychologist Jenaan Khaleeli (Tr. 311-313), Ms. Sanders opined she could perform the jobs described in her response to the ALJ's hypothetical. (Tr. 52).

In his hearing decision, the ALJ found that plaintiff had severe impairments of right hip trochanteric bursitis, osteoarthritis, flexion contracture of the right elbow, Achilles tendinopathy, obesity, a depressive disorder, and an anxiety disorder. (Tr. 18). He found that her hypertension, restless leg syndrome, and diabetes were not severe.[1] (Tr. 19).

---

[1]Indeed, at the hearing, plaintiff testified that her diabetes was controlled with diet. (Tr. 38).

6

Case 2:12-cv-00381-JRG-DHI   Document 16   Filed 08/14/13   Page 6 of 10   PageID #: 85

He found the plaintiff's residual functional capacity ["RFC"]. Although there are obviously some typographical errors in the wording of this (Tr. 20), the Court understands that he found that the plaintiff has the RFC to perform a reduced range of light work. She could only perform simple, routine, repetitive tasks. She could adapt only to gradual and infrequent changes in the work setting. She could maintain concentration and persistence only for simple, routine, repetitive tasks. She was limited to work that requires no interation with the public and only occasional interaction with coworkers and supervisors. Finally, and very importantly, she is "limited to work where supervision is supportive and non-confrontational." (Tr. 20).

He found that the plaintiff's subjective complaints were "not credible" to the extent they were inconsistent with his RFC finding. He gave little weight to the statement of her treating physician, Dr. Pack, finding she lacked evidence to support her assessment. (Tr. 21-24). Based upon the testimony of Ms. Sanders, the VE, he found that a significant number of jobs existed in the regional and national economies. Accordingly, he found that she was not disabled. (Tr. 25).

Plaintiff asserts that the Commissioner's decision is flawed in various respects. First, she alleges that the ALJ did not give sufficient weight to the opinion of Dr. Pack, the plaintiff's treating physician. She also maintains that there was a conflict between the Dictionary of Occupational Titles and the job classifications identified by the VE. Plaintiff also points out that under the Medical-Vocational Guidelines, with her age and vocational characteristics, she would have been disabled *per se* at the time of the ALJ's decision even if she could have performed the full range of sedentary work. Since her impairments so

7

severely eroded the occupational base of light work, she asserts that the ALJ should have found her disabled on that account.[2] The other assignment of error is that the VE's testimony does not provide substantial evidence that a significant number of jobs exist which this plaintiff could perform due to the uncertainty of the VE of whether jobs existed with "supportive and non-confrontational" supervision, which was part of the hypothetical question and a part of the found RFC.

As an initial observation, there can be no dispute that this is a "close" case, with a severely limited plaintiff. In fact, it is a razor thin proposition, which the ALJ recognized in his findings regarding those limitations. This obviously impacts the assignments of error plaintiff has put forth in her Motion.

For example, there is no proof that the plaintiff did not have the psychological impairments opined by Dr. Pack. The physical impairments are another story, with some proof from State Agency physicians that she has no severe physical impairments (Tr. 317 and 339). However, Dr. Pack also opines that she does "not believe that Mrs. Arwood is able to work in any capacity." (Tr. 369). Dr. Pack is not a vocational expert, but a family practitioner. Likewise, she is not a psychiatrist. The issue of disability is reserved to the Commissioner. Even though the ALJ stated he gave "little weight" to Dr. Pack's letter, he basically agreed with her diagnoses, but discounted her opinion that plaintiff was not able to do any work.

In fact, the Court believes that there is substantial evidence to support the ALJ's RFC

---

[2]Indeed, at the plaintiff's present "advanced" age of 55, she would be disabled under Medical-Vocational guidelines 202.01 or 202.02 even if she could perform the *full* range of light work.

8

finding. However, the Court also believes that the testimony of the VE is fatally flawed.

Ms. Sanders was trying to answer an unusual hypothetical. It included an appropriate element of a need for the plaintiff to have supervision which was supportive and non-confrontational. Ms. Sanders honestly answered that such supervision may exist or may not exist. She did not know. Her solution, obviously omitting that requirement from the mix, was to halve the number of jobs which could be performed with the other limitations in the hypothetical. However, this is not 50% of what presumably was nearly a million jobs, but 50% of no jobs if such supervisors do not exist.

The Court finds that the Commissioner did not meet her burden of showing that a significant number of jobs exist which this plaintiff can perform. In this regard, the Court would again reiterate that this is an extreme case. However, the Court would also point out that the plaintiff is not some 30 year old seeking SSI, but is now 55 years old with over 20 years of work experience as an LPN. Disability Insurance Benefits are not a lifetime achievement award. But in plaintiff's case, particularly at her age and with her RFC, they are justified.

Since there were no jobs identified which the plaintiff could perform, she has met her burden of establishing entitlement to benefits. It is therefore respectfully recommended that the Court order an award of disability insurance benefits. It is further recommended that the plaintiff's Motion for Judgment on the Pleadings [Doc. 12] be GRANTED, and the defendant Commissioner's Motion for Summary Judgment [Doc. 14] be DENIED.[3]

---

[3] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).

Respectfully submitted,


  s/ Dennis H. Inman
United States Magistrate Judge